## THE STATE *v.* JAMES .D. MIX.

The 5th sect. of the stat. of 7 February, 1829, which declares, that "whoever shall, with a dangerous weapon, or with intent to kill, inflict a wound less than mayhem, upon another, shall, on conviction, be imprisoned," &c, was intended to provide punishment for two distinct offences; that of assaulting with a dangerous weapon, and that of assaulting with intent to kill. The language is free from ambiguity, and cannot be affected by the French translation.

Anterior to the constitution, the laws of the territory were passed and promulgated in both the English and French languages; and the act in one language was entitled to as much respect as in the other; but that instrument having provided, by the 15th sect. of the 6th art., that "all laws that may be passed by the Legislature, shall be promulgated and preserved in the language in which the constitution of the United States is written," in the construction of statutes passed since its adoption, the language of the English text, when unambiguous, cannot be controlled by the French translation.

An indictment which charges a prisoner with "having unlawfully and feloniously, with a certain dangerous weapon, commonly called a life-protector, assaulted," &c., contains a sufficient description of the weapon, with which the assault was alleged to have been committed, using the very words of the statute of 7 Feb. 1829, s. 5. The use of the word *feloniously*, cannot vitiate the indictment. It may be rejected as surplusage.

APPEAL from the Criminal Court of the First District, *Canonge*, J.

*Preston*, Attorney General, for the State.

*Grymes*, for the appellant.

NICHOLLS, J. The appellant stands convicted before the Criminal Court of New Orleans, upon the first count of an indictment charging him with two separate and distinct offences. The prosecution is based on a statute approved the 7th February, 1829, § 4. 1 Bul. & Cur. Digest, 270.

The first count in the indictment charges the accused, with having unlawfully and feloniously committed an assault, with a certain dangerous weapon commonly called a life-protector, upon one George C. Brower; the second, with having unlawfully com-

mitted an assault upon George C. Brower, with intent to kill him, the said Brower, contrary to the form of the statute, &c. Upon this indictment, the jury returned the following verdict, viz; "Guilty as charged on the first count. Not guilty on the second count. Recommended to the clemency of the court."

An unsuccessful attempt was made in the lower court to arrest the judgment, upon four several grounds, as stated in the motion. First, "that by the finding of the jury, upon the first count of the indictment, which charges an assault, with a dangerous weapon, the defendant is guilty of no crime or offence according to the laws of Louisiana." Upon the solution of this question, (whether any such offence is recognized by the law,) will principally depend the fate of this appeal. The words of the statute above referred to are, "that whosoever shall, with a dangerous weapon, *or* with intent to kill, make an assault upon another person," &c. Confining ourselves to the statute, there can be little difficulty in putting a proper construction upon the words used. In fact, they admit of but one interpretation ; they contain no ambiguity, either latent or patent. They clearly indicate *two* offences ; first, an assault with a dangerous weapon ; secondly, an assault with intent to kill. The court has no authority to reject or disregard the disjunctive word *or*, which the law-maker has thought proper to insert in the section. On the contrary, the court is bound to believe, that it was thus inserted, to convey the true intent and meaning of the Legislature. To reject or disregard it, would be taking upon ourselves the right of legislation, instead of confining ourselves to our legitimate function of *ex-pounding*, and not that of *making* the law. The apparent harshness of the statute, as thus understood, offers to the court no justification in refusing to enforce the will of the Legislature, when clearly, plainly, and unequivocally expressed. The attention of the court has been called, by the counsel of the accused, to the French translation of the section under which this prosecution has been carried on. · This translation, in language as free from ambiguity or doubt as the original, conveys a meaning totally different from the English, constituting but a single offence. The words used are as follows; "*Quiconque, armé d'une arme dangereuse*, ET *avec intention de tuer*," &c., manifestly coupling *the intention to kill*, with the use of a dangerous weapon, *both* of which form a necessary ingredient of the crime.

It is urged on the court, that in cases of variance or discrepancy between the English text and the French translation, both should be referred to, and the legislative will be ascertained and declared, from an inspection of the two. Whether resort can be had to the French translation, where the law itself contains ambiguities or palpable contradictions, or is otherwise so lamely

worded as to render it difficult or impossible to comprehend its intent or meaning, presents a question, which the court is not called on, in this case, to decide. This section is devoid of *all* ambiguity or doubt. No two men can differ about its meaning. Anterior to the adoption of the constitution, the laws of the territory were passed and promulgated in the two languages; and our civil tribunals have repeatedly and invariably decided, that the one was as much entitled to respect as the other. These decisions contain a proper exposition of the law, as it *then* existed. The constitution, however, which is the supreme law, appears to have, formally, abrogated and abolished, what was, no doubt, *up to that time,* the settled law upon the subject. In the 15th section of the 6th article of the constitution, it is enacted, that " *All* laws that may be passed by the Legislature, and the public records of this State, and the judicial and legislative written proceedings shall be promulgated, preserved and conducted, in the language in which the constitution of the United States is written."

The language here used is as clear and unambiguous as that found in the section of the act of 1829, on which we have just been commenting. If *all* the laws passed by the Legislature are to be *promulgated, preserved* and *conducted* (the words used in the section) in the language in which the constitution of the United States is written, and that language is English, it is difficult to imagine how an act which has *not* been thus promulgated, preserved or conducted, can be considered as possessing the stringent force, power and effect, which is necessary to constitute a law. It would be a *petitio principii* to say, that it *has* been promulgated, conducted and preserved in the English language, because, in that case there would be no necessity of resorting to the French translation. Neither is it in point of fact critically true, as the English law is *not* the law contained in the French translation.

The second ground taken in arrest of judgment is, " that the weapon described in the first count of the indictment, as a certain dangerous weapon, called a life-protector, is not adequately described and set forth."

The accused is charged in this count of the indictment, with having unlawfully and feloniously, with a certain dangerous weapon, (commonly called a life-protector,) assaulted one George C. Brower, transferring the *identical words* used by the law-maker, into this count of the indictment. The weapon, with which the assault is alleged to have been made, is described in the words of the statute, which the court is of opinion contains a proper and adequate description. In the act to which this is a supplement, the words *deadly* weapon are used; but it pleased the

The State v. Mix.

Legislature to substitute *dangerous*, for deadly weapon—a substitution no doubt intended to subserve a wise and legitimate object. The third ground is not brought before this court, in such a shape as will enable it to decide upon its merits; and the fourth and last is embraced in the first, upon which the court has already expressed its opinion.

The use of the term *feloniously*, it is contended, vitiates the indictment and all proceedings under it. The court thinks differently; and that the offence was well described without it. It may be considered as descriptive of the state of mind under which the act was perpetrated, or may be rejected as surplusage. *Utile per inutile non vitiatur.* 1 Chitt. 243. 2 East, 1029.

*Judgment affirmed.*